**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

The Diocese of Rochester and
The Diocese of Buffalo, N.Y.,

       Plaintiffs,

  v.                                                                                    Civil Action No.:

The U.S. Small Business Administration
and Jovita Corranza, solely as the Administrator
of the U.S. Small Business Administration,

       Defendants.

## COMPLAINT

Plaintiffs The Diocese of Rochester ("Rochester Diocese") and The Diocese of Buffalo, N.Y. ("Buffalo Diocese") (collectively the "Plaintiffs") by and through their attorneys, Bond, Schoeneck & King PLLC, bring this Complaint against the United States of America, the U.S. Small Business Administration and Jovita Corranza, solely as the Administrator of the U.S. Small Business Administration (collectively, the "SBA" or "Defendants") and alleges as follows:

### INTRODUCTION

1. Under the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 ("CARES Act"), Congress and the President temporarily added a new program entitled the "Paycheck Protection Program" to the SBA's 7(a) Loan Program (hereinafter referred to as the "PPP").

2. The PPP and its associated benefits are intended to provide economic relief to small businesses nationwide who are adversely impacted under the Coronavirus Disease 2019 ("COVID-

19") Emergency Declaration issued by President Trump on March 13, 2020.

3. This is an action against the SBA under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* and section 525 of the United States Bankruptcy Code, 11 U.S.C. § 525, seeking: (a) declaratory judgment that the SBA's implementation of the PPP is unlawful, discriminatory against prospective borrowers who are debtors in bankruptcy, and beyond its statutory authority; (b) a writ of mandamus under 28 U.S.C. § 1361 to compel the SBA the remove from all PPP applications, including the PPP Official SBA Form 2483 ("PPP Application"), its disqualification of bankruptcy debtors as viable applicants; and (c) an order enjoining the SBA from denying the Plaintiffs a loan under the PPP based on the Plaintiffs' status as a chapter 11 debtors.

## THE PARTIES

4. The Rochester Diocese is a Roman Catholic diocese in New York and is a not-for-profit Religious Corporation under New York law with its principal place of business at 1150 Buffalo Road, Rochester, New York.

5. The Buffalo Diocese is a Roman Catholic diocese in New York and is a not-for-profit Religious Corporation under New York law with its principal place of business at 795 Main St., Buffalo, New York.

6. The SBA is an agency of the United States of America whose central office is located at 409 Third Street, S.Q., Washington DC 20416.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1334, 1361 and 2201. Jurisdiction is also proper under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.

8. Declaratory and injunctive relief is sought consistent with 5 U.S.C. § 706 and as

authorized in 28 U.S.C. § 2201 and 2202.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1409(a).

**FACTUAL BACKGROUND**

10. On March 27, 2020 the President of the United States signed into law the CARES Act, S. 3548, 116th Cong. (2020). The CARES Act is intended to, among other things, provide stimulus to the economy by distributing approximately $2.3 trillion to various industries, programs, and individuals.

11. The PPP is set forth in Title I of the CARES Act and is a temporary, short-term program, and amends Section 7(a) of the Small Business Act (15 U.S.C. 636(a)), the regulatory scheme through which the SBA guarantees covered loans.

12. The PPP allows lenders to give federally guaranteed loans to small businesses to cover payroll during the period of February 15, 2020 through June 30, 2020, as well as other expenses including payments of interest on mortgages, rent, utilities and interest on other debt.

13. No collateral or personal guarantees are required to receive a PPP loan.

14. Neither the SBA nor lenders charge any fees for the PPP loan.

15. The loan has very favorable terms in that it matures in 2 years and carries an interest rate of 1%.

16. Further, the PPP loan may be fully forgiven if the funds are used for payroll costs, interest on mortgages, rent, and utilities, and certain other conditions are met as set forth in the CARES Act.

17. Faith-based organizations like Plaintiffs are eligible to receive funding under the PPP.

18. The PPP loan pool, however, is limited in size and the PPP is administered on a first-come-first-served basis.

19. Congress has authorized up to $349 billion to the PPP. Accordingly, the PPP contains a finite amount of money.

20. The demand for the PPP program has been overwhelming.

21. Upon information and belief, the SBA reported on April 11, 2020, that only one week after applicants could start applying for the PPP loan, that banks had approved more than 725,000 loans totaling over $182 billion of the $349 billion allocated to the PPP.

22. President Trump announced on April 7, 2020 that the PPP program would be "running out of money pretty quickly."

23. The CARES Act grants the SBA emergency rule making authority and charges the SBA to issue regulations to carry out certain of the programs contemplated in the CARES Act, including the PPP. See CARES Act, section 1114.

24. On April 2, 2020, the SBA issued an interim final rule (the "First Interim Rule") providing guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in section 120.110, title 13 of the Code of Federal Regulations ("CFR 120.110"), as further described in SBA's Standard Operating Procedure 50-10, Subpart B, Chapter 2 ("SOP 50-10"). See First Interim Rule, 2(c) ("Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and further described further in SBA's Standard Operating Procedure").

25. The SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be organized for profit; be located in the united states; be small

(as defined by the SBA); and demonstrate the need for the desired credit. See SOP 50-10, pg. 85.

26. The SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

27. Notwithstanding the foregoing, on April 2, 2020, the SBA issued the PPP Application, that purports to disqualify bankruptcy debtors from participation in the PPP. The PPP Application is attached hereto as **Exhibit A**.

28. Further, Official SBA Form 2484, which is the Lender Application Form – Paycheck Protection Program Loan Guaranty ("PPP Lender Application"), states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. The PPP Lender Application is attached hereto as **Exhibit B**.

29. On April 4, 2020, the SBA issued a supplemental interim final rule ("the Second Interim Rule") further providing guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan.

30. Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

31. Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

32. The Plaintiffs, like many other businesses, have been financially affected by the COVID-19 pandemic in ways that could not have been foreseen.

33. The New York State "stay at home" directive that requires 100 percent of the state's non-essential workforce to stay home and prohibits gatherings of more than 10 people has further exacerbated this crisis for Plaintiffs.

34. The Plaintiffs rely on, as its primary source of income, revenue derived from monthly parish assessments. The parishes derive a significant portion of their revenue from offertory collection during masses and, a significant portion of the offertory collections occur during Holy Week which includes Easter Sunday mass.

35. Because the parishes have been closed to their parishioners and the public, the Plaintiffs are experiencing a significant decrease in revenue and anticipates that for as long as the "stay at home" directive remains in effect they will struggle to continue making payroll payments.

36. The Plaintiffs are businesses that Congress intended would benefit from the PPP to alleviate some of its payroll difficulties when it passed the CARES Act.

37. However, when Plaintiffs sought to apply for the PPP, they were informed that they were ineligible because of their status as a chapter 11 debtors.

38. If Plaintiffs are permitted to apply for a PPP loan, both the Rochester Diocese and the Buffalo Diocese will file separate motions in the Bankruptcy Court seeking entry of an order pursuant to Bankruptcy Code section 364(b) authorizing each Plaintiff to obtain post-petition financing on an unsecured basis (the "364 Motion").

## COUNT I

### Administrative Procedure Act – Exceeds Statutory Authority

39. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 38 above with the same force and effect as though fully set forth herein.

40. Under the APA, courts must "hold unlawful and set aside agency action" that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

41. Defendants may only exercise authority conferred by statute.

42. The SBA issued the First Interim Rule which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10.

43. SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be organized for profit; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. See SOP 50-10, pg. 85.

44. SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

45. Notwithstanding the foregoing, the SBA issued the PPP Application, that purports to disqualify bankruptcy debtors from participation in the PPP. *See* **Exhibit A**.

46. Further, the SBA issued the PPP Lender Application which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. *See* **Exhibit B**.

47. The SBA issued the Second Interim Rule which further provides guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan.

48. Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

49. Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

50. Defendants implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is therefore "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA. 5 U.S.C. § 706(2)(C).

51. The SBA has made a final determination with respect to the issuance of the PPP Application and the PPP Lender Application.

52. There are no administrative appeals or remedies available to Plaintiffs to seek review of the SBA's determination to issue the PPP Application and the PPP Lender Application.

53. Defendants' violation of the APA causes ongoing harm to Plaintiffs.

54. Plaintiffs are entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA.

55. Further, Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiffs a loan under the PPP based on the Plaintiffs' status as a chapter 11 debtors.

56. Plaintiffs are likely to succeed on the merits of their claims against the SBA.

57. Plaintiffs will suffer immediate and irreparable harm as a result of the unlawful debtor disqualification criteria because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds are being rapidly being depleted

and will no longer be available unless Congress enacts further relief. Without a PPP loan, the Plaintiffs will be forced to lay off or furlough essential employees which will have a permanent effect on the Plaintiffs' bankruptcy estates and alter how the Chapter 11 Cases will be administered.

58. Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

59. Plaintiffs have no adequate remedy at law.

## COUNT II

### Administrative Procedure Act – Arbitrary and Capricious

60. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 59 above with the same force and effect as though fully set forth herein.

61. The APA provides that courts must "hold unlawful and set aside" agency action that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A).

62. The SBA issued the First Interim Rule which provides guidance on, among other things, the eligibility requirements to receive a loan under the PPP. The First Interim Rule adopts the ineligibility standards set forth in CFR 120.110, as further described in SOP 50-10.

63. SOP 50-10 provides that a "Small Business Applicant" must, among other things: be an operating business; be organized for profit; be located in the United States; be small (as defined by the SBA); and demonstrate the need for the desired credit. *See* SOP 50-10, pg. 85.

64. SOP 50-10 also provides that the businesses listed in CFR 120.110 are not eligible for an SBA loan. Bankruptcy debtors are not the listed as an ineligible business in CFR 120.110.

65. Notwithstanding the foregoing, the SBA issued the PPP Application, that purports to disqualify bankruptcy debtors from participation in the PPP. *See* **Exhibit A**.

66. Further, the SBA issued the PPP Lender Application which states that the PPP loan cannot be approved unless the applicant certifies that neither the applicant nor any owner is presently involved in any bankruptcy. *See* **Exhibit B**.

67. The SBA issued the Second Interim Rule which further provides guidance on the PPP. The Second Interim Rule does not provide that bankruptcy debtors are ineligible for the PPP loan.

68. Defendants implemented the PPP in a manner that unlawfully excludes debtors in bankruptcy.

69. Nothing in the CARES Act, SBA Regulations, SOP 50-10, the First Interim Rule or the Second Interim Rule authorizes or permits the SBA to exclude debtors in bankruptcy from the PPP.

70. Defendants implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is therefore "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA. 5 U.S.C. § 706(2)(A).

71. The SBA has made a final determination with respect to the issuance of the PPP Application and the PPP Lender Application.

72. There are no administrative appeals or remedies available to Plaintiffs to seek review of the SBA's determination to issue the PPP Application and the PPP Lender Application.

73. Defendants' violation of the APA causes ongoing harm to Plaintiffs.

74. Plaintiffs are entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA.

75. Further, Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiffs a loan under the PPP based on the Plaintiffs' status as chapter 11 debtors.

76. Plaintiffs are likely to succeed on the merits of their claims against the SBA.

77. Plaintiffs will suffer immediate and irreparable harm as a result of the unlawful debtor disqualification criteria because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds are being rapidly being depleted and will no longer be available unless Congress enacts further relief.  Without a PPP loan, the Plaintiffs will be forced to lay off or furlough essential employees which will have a permanent effect on the Plaintiffs' bankruptcy estates and alter how the Chapter 11 Cases will be administered.

78. Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

79. Plaintiffs have no adequate remedy at law.

## COUNT III

**Violation of 11 U.S.C. § 525 – Discriminatory Treatment of Chapter 11 Debtor**

80. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 79 above with the same force and effect as though fully set forth herein.

81. Section 525(a) of the Bankruptcy Code provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to . . . a person that is or has been a debtor under this title." 11 U.S.C. § 525(a).  This list is illustrative rather than exhaustive.

82. The PPP is a government program designed to provide relief to small businesses affected by COVID-19.

83. The SBA is denying Plaintiffs the benefits provided by the PPP through the debtor in bankruptcy disqualification sections in the PPP Application and PPP Lender Application in violation of section 525(a) of the Bankruptcy Code.

84. Plaintiffs are not being denied access to the PPP because of their creditworthiness, in fact, the PPP was enacted to provide relief to struggling small businesses without regard to their creditworthiness.

85. But for the debtor in bankruptcy disqualification sections in the PPP Application and PPP Lender Application, Plaintiffs are otherwise eligible for a PPP loan.

86. As such, the debtor in bankruptcy disqualification sections in the PPP Application and PPP Lender Application are interfering with Plaintiffs' ability to obtain a "fresh start" and their ability to retain its employees many of whom are crucial to the Plaintiffs' business as going concerns.

87. Through the bankruptcy disqualification sections in the PPP Application and PPP Lender Application, Defendants have discriminated against chapter 11 debtors generally, and Plaintiffs in particular, in violation of Section 525(a) of the Bankruptcy Code.

88. Defendants' violation causes ongoing harm to Plaintiffs.

89. Plaintiffs are entitled to a declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is unlawful and discriminatory against debtors in bankruptcy in violation of Section 525(a) of the Bankruptcy Code.

90. Further, Plaintiffs are entitled to preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiffs a loan under the PPP based on the Plaintiffs' status as chapter 11 debtors.

91. Plaintiffs are likely to succeed on the merits of their claims against the SBA.

92. Plaintiffs will suffer immediate and irreparable harm as a result of the unlawful debtor disqualification criteria because the PPP offers applicants guaranteed loans that are not otherwise obtainable in the private marketplace, the PPP funds are being rapidly being depleted and will no longer be available unless Congress enacts further relief. Without a PPP loan, the Plaintiffs will be forced to lay off or furlough essential employees which will have a permanent effect on the Plaintiffs' bankruptcy estates and alter how the Chapter 11 Cases will be administered.

93. Further, the balance of the hardships weighs heavily in favor of the issuance of injunctive relief.

94. Plaintiffs have no adequate remedy at law.

## COUNT IV

### MANDAMUS UNDER 28 U.S.C. §1361

95. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 94 above with the same force and effect as though fully set forth herein.

96. The Defendants have the non-discretionary duty to comply with the CARES Act and the provisions of the PPP to apply criteria to the PPP that are substantively and/or procedurally valid and to avoid imposing criteria to the PPP that are substantively and/or procedurally *ultra vires*.

97.     Plaintiffs are entitled to a writ of mandamus under 28 U.S.C. § 1361 to compel the SBA the remove from all PPP applications, including the PPP Application and the PPP Lender Application its disqualification of bankruptcy debtors as viable applicants because SBA acted beyond its statutory authority in implementing such disqualifying factors.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.     On Count I:  (a) declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of the APA; and (b) preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiffs a loan under the PPP based on Plaintiffs' status as chapter 11 debtors.

2.     On Count II:  (a) declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is "arbitrary, capricious, [or] an abuse of discretion" in violation of the APA; and (b) preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiffs a loan under the PPP based on Plaintiffs' status as a chapter 11 debtors.

3.     On Count III:  (a) declaratory judgment that Defendants' implementation of the PPP in a manner that causes debtors in bankruptcy, including Plaintiffs, to be ineligible is unlawful and discriminatory against debtors in bankruptcy in violation of Section 525(a) of the Bankruptcy Code; and (b) preliminary and permanent injunctive relief enjoining Defendants from denying Plaintiffs a loan under the PPP based on Plaintiffs' status as a chapter 11 debtors.

4.     On Count IV:  a writ of mandamus under 28 U.S.C. § 1361 to compel the SBA the

remove from all PPP applications, including the PPP Application and the PPP Lender Application its disqualification of bankruptcy debtors as viable applicants because SBA acted beyond its statutory authority in implementing such disqualifying factors.

5. Additionally, Plaintiffs request such other and further relief as this Court may deem just and proper.

Dated: April 15, 2020

                                      Respectfully submitted,

                                      BOND, SCHOENECK & KING PLLC

by: _____
Stephen A. Donato
Charles J. Sullivan
Brian J. Butler
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8336
Facsimile: (315) 218-8100
sdonato@bsk.com
csullivan@bsk.com
bbutler@bsk.com

*Counsel for Plaintiffs The Diocese of Rochester and The Diocese of Buffalo, N.Y.*